### Kathryn M. FROELICH, Plaintiff,

v.

### Vito PETRELLI and Glenn McDermott, Defendants.

### Civ. No. 77–0206.

United States District Court,
D. Hawaii.

June 21, 1979.

---

Joseph M. McKellar, and M. Alan Rhodey, Honolulu, Hawaii, for plaintiff.

James Kawashima, and J. Douglas Ing., Honolulu, Hawaii, for defendant Petrelli.

Warren Price, III, and Michael A. Cane, Goodsill, Anderson & Quinn, Honolulu, Hawaii, for defendant Glenn McDermott.

### ORDER DENYING MOTION TO TRANSFER AND GRANTING MOTION TO DISMISS

SAMUEL P. KING, Chief Judge.

On June 26, 1975, plaintiff Kathryn M. Froelich, a citizen of Hawaii, was a passenger in an automobile operated by defendant Glenn McDermott, a citizen of California, when it was involved in a traffic accident near Long Beach, California, with an automobile driven by defendant Vito Petrelli, a citizen of California. On June 9, 1977, plaintiff filed suit in this Court alleging that she had been severely injured in this accident due to the negligence of both defendants and that she was entitled to $75,000 in damages. Federal jurisdiction was based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a) and venue was ostensibly premised upon the portion of 28 U.S.C. § 1391(a) which allows diversity suits to "be brought . . . in the judicial district where all plaintiffs . . . reside

. . . ." This suit was filed after the California one-year statute of limitations ·had run and just prior to the running of the · Hawaii two-year statute of limitations.

On February 6, 1979, defendant Petrelli filed a motion, in which defendant McDermott joined on February 8, to dismiss the complaint on the ground that this Court lacks personal jurisdiction over the defendants or, in the alternative, to transfer this action to the Central District of California "[f]or the convenience of parties and witnesses, in the interest of justice" pursuant to 28 U.S.C. § 1404(a) if this Court concluded that it had personal jurisdiction over the defendants. A hearing on defendants' alternative motions was held on March 16. At that hearing, plaintiff conceded that this Court lacks personal jurisdiction over the defendants; nevertheless, plaintiff argued that this action should not be dismissed but rather transferred to the Central District of California. Plaintiff, relying upon the authority of *Shong Ching Lau v. Change*, 415 F.Supp. 627 (E.D.Pa.1976), contended that this Court has the power to transfer venue in the absence of personal jurisdiction over the defendants if such a transfer would be "in the interest of justice." Defendants responded that, in the absence of personal jurisdiction over the defendants, this Court has no such power to transfer venue and nonetheless such a transfer in this case would not be "in the interest of justice." After noting its predilection to follow the rationale of *Shong Ching Lau*, this Court granted defendants' request for more time to brief and present oral argument on the two points they raised.[1]

A second hearing was held on March 22, at which time each party was instructed to submit supplemental memoranda on the issue of whether a transfer of venue would be "in the interest of justice." Having carefully considered the memoranda and oral arguments of the parties, this Court is of the opinion that it has the power to transfer venue under either 28 U.S.C. §§ 1404(a) or § 1406(a) in the absence of

personal jurisdiction over the defendants, but that transfer of venue is inappropriate in this case.

The starting point for analyzing the power of a district court to transfer venue in the absence of personal jurisdiction over the defendants is *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). *Goldlawr* was a private antitrust action for treble damages under the Sherman and Clayton Acts that was filed in the Eastern District of Pennsylvania. That court concluded that venue was improperly laid as to two corporate defendants because they could not be "found" in, nor were they doing business in, that forum. The court also lacked personal jurisdiction over these defendants. Nevertheless, the court transferred the case to the Southern District of New York, a district where the parties could be served. The court acted pursuant to 28 U.S.C. § 1406(a), which provided that:

[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

The New York district court dismissed the action on the ground that the Pennsylvania court had no power to transfer the suit because it lacked personal jurisdiction over the parties. The Supreme Court reversed, holding that 28 U.S.C. § 1406(a) is not limited to cases in which the transferor court has personal jurisdiction over the defendants.

Three lines of cases have evolved from *Goldlawr* which take different routes to arrive at the ultimate conclusion that a district court which has no personal jurisdiction over the defendants may transfer a suit "in the interest of justice" to another district court even though venue was properly laid in the transferor court. One line of cases extended the rationale of *Goldlawr* to cover transfers of venue effected pursu-

1. Because plaintiff had conceded that this Court lacks personal jurisdiction over the de-

fendants, the defendants withdrew their alternative motion to transfer this suit on March 21.

ant to 28 U.S.C. § 1404(a). This statute provides that:

> [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Thus, it was held that a district court lacking personal jurisdiction over the defendants may transfer a suit pursuant to § 1404(a). *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir.), *cert. denied*, 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964); *Koehring Co. v. Hyde Construction Co.*, 324 F.2d 295, 297–98 (5th Cir. 1963); *accord*, *Shong Ching Lau v. Change*, 415 F.Supp. 627 (E.D.Pa.1976); *see* 1 *Moore's Federal Practice* ¶ 0.145[4.–5], at 1608–13 (2d ed. 1978); 15 *C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure* § 3827, at 171–72 (1976).

A second line of cases holds that the language of 28 U.S.C. § 1406(a) does not require incorrect venue in the 28 U.S.C. § 1391 sense in order to permit transfer under that section. *Dubin v. United States*, 380 F.2d 813 (5th Cir. 1967); *Mayo Clinic v. Kaiser*, 383 F.2d 653 (8th Cir. 1967); *Taylor v. Love*, 415 F.2d 1118 (6th Cir. 1969), *cert. denied*, 397 U.S. 1023, 90 S.Ct. 1257, 25 L.Ed.2d 533 (1970); *see* 1 *Moore's Federal Practice* ¶ 0.146[5] at 1668 n.22 (2d ed. 1970). The language of § 1406(a) suggests that a court's transfer power is conditioned upon improper venue by its reference only to "a district in which is filed a case laying venue in the wrong division or district . . . . ." Nevertheless, the *Dubin* court concluded that:

> [t]he statute does not refer to "wrong" venue, but rather to venue laid in a "wrong division or district." We con-

clude that a district is "wrong" within the meaning of § 1406 whenever there exists an "obstacle [to] * * * an expeditious and orderly adjudication" on the merits. Inability to perfect service of process on a defendant in an otherwise correct venue is such an obstacle.

380 F.2d at 815 (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. at 466–67, 82 S.Ct. at 915–16). It was reasoned that "[c]ertainly a party who has been totally wrong in selecting the forum [as in *Goldlawr*] would have no greater right of transfer under § 1406(a) than a party who has selected a forum which is wrong only because service of process cannot be obtained." *Mayo Clinic v. Kaiser*, 383 F.2d at 655–56.[2]

A third approach which declined to elect between reliance on 28 U.S.C. § 1404(a) or on § 1406(a) was adopted in *Volk Corp. v. Art-Pak Clip Art Service*, 432 F.Supp. 1179 (S.D.N.Y.1977). In that case, Judge Weinfeld apparently read these two provisions together and placed a judicial gloss on the statutory language, holding that the court "has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in [the] district, if a transfer would be in the interest of justice." 432 F.Supp. at 1181 (footnotes omitted); *see Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 80 n.9 (2d Cir. 1978). The Second Circuit, after noting that this reasoning both reaffirms "the *Goldlawr* majority's emphasis on the statutory phraseology 'in the interest of justice'" and avoids "the analytic difficulties which inhere in both the *Dubin* and *Berkowitz* rationales," adopted Judge Weinfeld's statement of the law. *Corke v. Sameiet M. S. Song of Norway*, 572 F.2d at 80.[3]

---

**2.** This interpretation of § 1406(a) cured the incongruous result hypothesized by Justice Harlan in his *Goldlawr* dissent that Congress could permit transfer

> where *both* venue and jurisdiction are lacking in the district court where the action is commenced, while neglecting to provide any comparable alleviate measures for the plaintiff who selects a district where venue is proper but where personal jurisdiction cannot be obtained.

369 U.S. at 468, 82 S.Ct. at 916 (footnote omitted).

**3.** Defendants cited two cases to support their contention that this Court lacks power to transfer this case pursuant to 28 U.S.C. § 1406(a). *Selsby v. Vecchione*, 216 F.Supp. 207 (S.D.N.Y. 1963); *Athletes Foot of Delaware, Inc. v. Ralph Libonati Co.*, 445 F.Supp. 35, 48–49 (D.Del. 1977). The holding of the *Selsby* court is a dead letter in its own circuit after *Corke*. The

Therefore, I conclude that this Court has the power to transfer this action in the absence of personal jurisdiction over the defendants under either § 1404(a) or § 1406(a) if such a transfer is "in the interest of justice." [4]

■ The crucial inquiry in the determination of whether it would be "in the interest of justice" to grant plaintiff's motion to transfer this suit to the Central District of California concerns the application of the California one-year statute of limitations.[5] If this suit had been filed here before the California statute of limitations had run, I would conclude that a transfer would be proper, whether the motion to transfer had been made prior to [6] or after [7] the statute had run.

---

Delaware court of *Athletes Foot* was free to reach either conclusion because the Third Circuit expressly left this question open in *Berkowitz*; nevertheless, it would have been bound by the *Berkowitz* rationale regarding transfer pursuant to § 1404(a).

**4.** There is no need to specify whether the transfer is made pursuant to § 1404(a) or § 1406(a) for purposes of determining which statute of limitations provision would apply. In the instant case, "the statute of limitations to be applied should be that of the transferee state, whether the transfer is characterized as having been made under § 1404(a) or § 1406(a)." 1 *Moore's Federal Practice* ¶ 0.145[4.–5], at 1613 (2d ed. 1978); *see* note 5 *infra*.

**5.** *See Cal.Civ.Proc.Code* § 340(3) (Deering). Both sides agree that, if this suit were transferred, the California one-year statute of limitations would apply. The rationale for this conclusion is clear.

> When the venue in the district in which the action is brought is proper, but service of process cannot be had there, . . . plaintiff could not maintain his action in the district in which he filed it, and therefore could not take advantage of the law governing that district, since he could not obtain jurisdiction of the defendant. Therefore he should not be permitted to file his action there for the purpose of capturing the law of that jurisdiction for transportation to the jurisdiction in which service can be obtained. In one fashion or another courts have resisted this sort of maneuver.

1 *Moore's Federal Practice* ¶ 0.145[4.–5], at 1608–09 (2d ed. 1978) (footnote omitted).

Generally, the courts have concluded that the statute of limitations of the transferee forum is applicable. *E.g., Carson v. U-Haul Co.*, 307 F.Supp. 1086 (E.D.Ky.1969), *aff'd,* 434 F.2d 916 (6th Cir. 1970); *Viaggio v. Field*, 177 F.Supp. 643 (D.Md.1959); *Boughton v. Shoulders*, 116 F.Supp. 391 (W.D.Ky.1953). In *Parham v. Edwards*, 346 F.Supp. 968 (S.D.Ga.1972), *aff'd,* 470 F.2d 1000 (5th Cir. 1973), the district court *sub silentio* extended the rationale of *Van Dusen v. Barrack*, 376 U.S. 612, 639–40, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), to conclude that the law of the *transferor* court should be applied even when the *plaintiff* has requested the trans-

fer. *See* 346 F.Supp. 972–73. Nevertheless, the court therefore concluded that, because the statute of limitations of the transferee state had already run at the time the suit had been filed in the transferor court, the requested transfer would not be "in the interest of justice." *Id.; cf. Mayo Clinic v. Kaiser*, 383 F.2d 653, 656 (8th Cir. 1967) (In a case where both states had two-year statutes of limitations, the court concluded that the statute of the transferor state was applicable and that it was tolled by the filing of the complaint).

> It should also be noted that
> [i]n many situations analogous to the present case the existence of a "borrowing" statute in the transferor forum might mean that the limitation period to be applied there would be the same as that of the transferee forum, if, as here, it is the place where the injury occurred and the residence of the defendants.

*Kaiser v. Mayo Clinic*, 260 F.Supp. 900, 908 (D.Minn.1966), *aff'd,* 383 F.2d 653 (8th Cir. 1967); *see Haw.Rev.Stat.* § 657–9; Annot., 149 A.L.R. 1224 (1944); 75 A.L.R. 203 (1931). For an extended discussion and analysis of the appropriate law to be applied in transfer cases, see *Kaiser v. Mayo Clinic*, 260 F.Supp. at 905–08.

**6.** The effect of such a transfer would be to save plaintiffs from paying a second filing fee and having to serve the defendants all over again. *But see Athletes Foot of Delaware v. Ralph Libonati Co.*, 445 F.Supp. 35, 49 n.47 (D.Del. 1977).

**7.** "[T]he application of § 1404(a) in the federal courts has produced formidable dicta to the effect that the second action is barred by the statute of limitations where a motion to transfer under § 1404(a) is denied in a suit pending elsewhere on the same claim." *Hugo Stinnes Steel and Metals Co. v. S. S. Elbe Oldendorff*, 372 F.Supp. 705, 707 (S.D.Ga.1974); *see United States v. Berkowitz*, 328 F.2d 358, 360 (3d Cir.), *cert. denied,* 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964); *Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514, 517 (4th Cir. 1955); *Hugo Stinnes Steel and Metals Co. v. S. S. Elbe Oldendorff*, 363 F.Supp. 1391 (S.D.N.Y.1973), *aff'd,* 505 F.2d 727 (2d Cir. 1974); *Callan v. Lillybelle, Ltd.*, 39 F.R.D. 600, 603 (S.D.N.Y. 1966). The result is the same if a motion to

The major difficulty with the instant case is that this suit was filed after the California statute of limitations had run. It would not be "in the interest of justice" to transfer this case if the suit would be barred in the transferee court by the applicable statute of limitations. *Haire v. Miller*, 447 F.Supp. 57, 64 (N.D.Miss.1977); *Viaggio v. Field*, 177 F.Supp. 643 (D.Md.1959); 1 *Moore's Federal Practice* ¶ 0.146[5], at 1666 (2d ed. 1978); *cf. Fox v. Warner Bros. Pictures, Inc.*, 95 F.Supp. 360, 362 (D.Del.1950) (In denying a transfer under § 1406(a), the court pointed out that, if the case were transferred, the transferee court would also dismiss the case). It would be an injustice to the defendants to put them to the additional expense of hiring California counsel merely to plead the statute of limitations. Therefore, plaintiff's motion to transfer should be denied unless she "can show some grounds for avoiding the bar of the . . statute of limitations or that the . . . statute of limitations is not applicable . . . ." *Viaggio v. Field*, 177 F.Supp. at 645.[8]

Plaintiff contends that the defendants would be equitably estopped from asserting the California statute of limitations defense because of their conduct in dealing with the plaintiff. The ultimate determination of

this issue should be made by the federal court in California. Nevertheless, it is the duty of this Court in deciding the motion to transfer to make a preliminary assessment of plaintiff's argument and determine whether it has any merit. I conclude that if plaintiff has raised a colorable argument for tolling the California statute of limitations, a transfer would be appropriate to enable plaintiff to litigate this issue in the proper forum.

Plaintiff contends that she was lulled into a false sense of security that led her to refrain from bringing a timely suit by the actions of defendants' insurance carriers (Allstate and State Farm Mutual). Plaintiff argues that the carriers' willingness to continue negotiations and State Farm's statement that an offer could be made when certain supplemental information was furnished even after the statute of limitations had run is indicative of a scheme by defendants which warrants the application of the theory of equitable estoppel.

Plaintiff relies on *Bomba v. W. L. Belvidere, Inc.*, 579 F.2d 1067 (7th Cir. 1978), as authority for her argument. In *Bomba*, the defendant sent a letter to plaintiffs acknowledging its wrongdoing and offering plaintiffs the opportunity to rescind their agreement and receive a refund. Plain-

---

transfer under § 1406(a) is denied. *See Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978); *Dubin v. United States*, 380 F.2d 813, 814 (5th Cir. 1967); *Orzulak v. Federal Commerce and Navigation Co.*, 168 F.Supp. 15, 18 (E.D.Pa.1958).

On the other hand, the filing of a suit in the transferor court, even if that court lacks personal jurisdiction over the defendants, tolls the applicable statute of limitations. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). "The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure." *Id.*

[T]he purpose for making transfers would be obliterated in many cases if the statute of limitations of the transferee forum were applied at the date of transfer, and . . . if such were the rule there would be little purpose in transferring the case instead of dismissing it.

*Mayo Clinic v. Kaiser*, 383 F.2d 653, 656 (8th Cir. 1967).

I conclude that a transfer in this instance would effectuate the intent of the transfer provisions to remove "whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits." *Goldlawr*, 369 U.S. at 466–67, 82 S.Ct. at 916; *Founds v. Shedaker*, 278 F.Supp. 32, 33 (E.D. Pa.1968). Thus, such a transfer would be "in the interest of justice." *Choryak v. Petrick*, 213 F.Supp. 729, 730 (M.D.Pa.1963); *Orzulak v. Federal Commerce and Navigation Co.*, 168 F.Supp. 15, 18 (E.D.Pa.1958). *But cf. Hugo Stinnes Steel and Metal Co. v. S. S. Elbe Oldendorff*, 363 F.Supp. 1391, 1392 (S.D.N.Y.1973), *aff'd*, 505 F.2d 727 (2d Cir. 1974) (The court denied a motion to transfer because the defendants had yet to be served even though the suit had been filed almost two years before. The court concluded that "[t]he 'interest of justice' is not served in subjecting parties to the defense of a stale claim.")

**8.** This was the specific issue that I requested supplemental memoranda on at the March 22 hearing.

tiffs, who were not represented by counsel, made several attempts to get defendant to carry out its promise prior to the running of the statute of limitations. After the statute had run, defendant's attorney informed the plaintiffs that defendant did not intend to comply with its promise. Plaintiffs then consulted an attorney who subsequently brought suit and relied on the theory of equitable estoppel.

The Seventh Circuit explained the parameters for the application of this doctrine.

Estoppel arises where one, by his conduct, lulls another into a false security and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were found to be just, but when after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay.

*Bomba,* 579 F.2d at 1071 (quoting *McWaters and Bartlett v. United States,* 272 F.2d 291, 296 (10th Cir. 1959)). "[A]ll that is necessary for invocation of the doctrine of equitable estoppel is that the plaintiff reasonably rely on the defendant's conduct or representations in forbearing suit." 579 F.2d at 1071. The *Bomba* court then concluded that the doctrine was applicable in that case.

In contrast, plaintiff has failed to produce any evidence in this case which would indicate that defendants had made any representations or exhibited any conduct upon which plaintiff could "reasonably rely . . in forbearing suit." Plaintiff relies heavily on two letters from the insurance carriers,

one from State Farm stating that an offer could be made when it received more information and another from Allstate stating that it had paid the plaintiff's medical bills under the reimbursement provisions of defendant McDermott's automobile insurance policy. These letters, however, were both sent more than three months after the statute of limitations had run and thus could not have "lulled" the plaintiff into a false sense of security in order to cause her to miss the statutory filing deadline. Consequently, the rationale of the *Bomba* court is of no help to plaintiff.

Furthermore, it is likely that the applicable test for equitable estoppel in this case would be more stringent than that of *Bomba.* The doctrine of equitable estoppel arose in *Kunstman v. Mirizzi,* 234 Cal. App.2d 753, 44 Cal.Rptr. 707 (1965), an action for personal injuries sustained by an out-of-state plaintiff in an automobile accident that occurred in California. Plaintiff therein, a Utah resident, retained a Utah attorney to represent her. Negotiations were commenced between the attorney and a representative of defendant's automobile liability carrier two months after the accident, but plaintiff's complaint was not filed until almost four months after the statute of limitations had run.

The California court rejected plaintiff's contention that the defendant was equitably estopped from asserting the statute of limitations defense. In reaching this conclusion, the court emphasized two factors pertinent herein: (1) the lack of any affirmative promises by the claims adjuster as to the tolling of the statute of limitations, and (2) the fact that the plaintiff was represented by counsel.[9] Thus, in view of the simi-

---

9. The court stated:

In this case there were no affirmative promises made, according to the complaint, by the adjuster as to tolling the statute of limitations; no representations were made amounting to fraud or constructive fraud, and particularly as far as "how much," if any, would be paid in the settlement; nor is there any confidential or fiduciary relationship. . . .
[Plaintiff] was being protected by an attorney, who is charged with knowledge of the

law in California as far as the statute of limitations is concerned even though he may practice in other states . . . . To permit one who has knowledge of the law to attempt to negotiate a settlement and subsequently plead estoppel would not only destroy the effect of the legislative statutes of limitation but would seriously impair the climate and effectiveness of the present method of encouraging settlement without litigation.
234 Cal.App.2d at 757–58, 44 Cal.Rptr. at 710–11.

larities between *Kunstman* and the case at bar, plaintiff's equitable estoppel argument has little chance of success.[10]

Because plaintiff has failed to raise any colorable arguments for avoiding the California statute of limitations, I conclude that a transfer of this suit would not be "in the interest of justice." Therefore, IT IS HEREBY ORDERED that plaintiff's motion to transfer this suit is DENIED and defendants' motion to dismiss is GRANTED.

---

**10.** In *Tubbs v. Southern California Rapid Transit District,* 67 Cal.2d 671, 63 Cal.Rptr. 377, 382, 433 P.2d 169, 174 (1967), the California Supreme Court cited *Kunstman* with approval for the proposition that plaintiff's attorneys are charged with knowledge of the California statute of limitations.